UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STATE OF OHIO, EX REL.
MICHAEL DEWINE, OHIO
ATTORNEY GENERAL,

        Plaintiff,

v.

JOHN G. BREEN, *et al.*,

        Defendants.

Case No. 2:16-cv-802
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This is a dispute as to who is responsible for real estate contaminated with pesticides. The case is currently before the Court on Defendant Trabue Dublin, LLC's ("Defendant Trabue" or "Trabue") Motion for Judgment on the Pleadings (ECF No. 65) and Defendant Donald W. Dick's ("Defendant Dick") Motion for Judgment on the Pleadings (ECF No. 67.) For the reasons that follow Defendant Trabue's Motion for Judgment on the Pleadings is **GRANTED** and Defendant Dick's Motion for Judgment on the Pleadings is **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

#### A. Procedural Background

The State of Ohio, ex rel. Michael DeWine, Ohio Attorney General ("the State"), brings suit against multiple Defendants, for the waste contamination at 2121 Riverside Drive, Upper Arlington, Ohio. Defendant Trabue, a neighboring property, and Defendant Dick, the current owner move separately for Judgment on the Pleadings for counts three, (operation of a hazardous waste facility without a permit), four (failure to have a closure plan), five (failure to remove hazardous waste in accordance with an approved closure plan), and ten (ultrahazardous activity).

The State opposes both motions.

## B. Factual Background

The State alleges that real estate located at 2121 Riverside Drive, Upper Arlington Ohio has been contaminated with pesticides. (Compl. ¶¶ 2, 26, ECF No. 1.) Further, the State alleges that the pesticide contamination was caused by Defendant BTX Enterprises, Inc. ("BTX"), which was formerly known as Buckeye Terminix Company, Inc. (*Id.* ¶¶ 26, 32.) BTX was owned and operated by John G Breen and Janice L. Breen from 1980 to until they transferred the real estate to the John G. Breen and Janice L. Breen trusts on or about February 21, 2001. (*Id.* ¶ 28.) Defendant Dick purchased the BTX property in 2008 and is the property's current owner. (*Id.* ¶ 29.) Defendant Trabue has owned the properties neighboring 2121 Riverside Drive since August 6, 2010. (Compl. ¶¶ 18, 32.)

In 1982, the Ohio Environmental Protection Agency ("Ohio EPA") received complaints concerning the dumping of Chlordane by BTX employees. (Compl. ¶ 34.) Ohio EPA records show that Chlordane was being dumped down drains and some liquid dumped over a hill toward the Scioto River. Additionally, Chlordane was being dumped and/or leaked into a sink and storm sewer, and onto a gravel parking lot. (*Id.*) On or about July 10, 1981 Ohio EPA notified BTX that this constituted illegal disposal of hazardous waste, and requested BTX to commence corrective measures. (Compl. ¶ 31.)

Over time, Ohio EPA received additional complaints of dumping and negligent and improper use of pesticides at 2121 Riverside Drive. (Compl. ¶ 37.) On December 30, 1981 Ohio EPA collected soil/sediment samples from the bottom of a drainage ditch in the floodplain on properties neighboring 2121 Riverside drive ("Neighboring Properties"). (Compl. ¶ 40.) The testing showed the presence of Aldrin and Chlordane. (*Id.*) Ohio EPA also discovered ten 55 gallon drums on 2121 Riverside Drive, three of which were labeled as containing Aldrin and Aromatic Petroleum Distillates. (Compl. ¶ 42.) In 1988, a 500 gallon concrete chemical recovery tank was excavated. (Compl. ¶ 43.) The tank, designed to recover spillage from the site, was in degraded condition and leakage from the tank may have contributed to soil and

ground water contamination. (Compl. ¶ 43.)

In July 1991, experts hired by BTX collected soil samples from the Neighboring Properties which contained concentrations of Aldrin, Chlordane, Dieldrin, gamma-BHC, and Heptachlor. (Compl. ¶ 45.) Subsequently, Breen, as owner of the BTX property agreed to and signed June 26, 1992 Ohio EPA Director's Final Findings and Orders ( the "1992 Director's Orders"), which required him to investigate and remediate contamination on the Neighboring Properties. (Compl. ¶ 33.)

In July 1992, BTX's consultant began the investigation and remediation work, including collecting ground water samples from four monitoring wells installed on the Neighboring Properties, and found the presence of Chlordane, Dieldrin, and the volatile organic compound 1,1-Dichloroethane. (Compl. ¶ 47.) Soil samples collected from the Neighboring Properties contained concentrations of Aldrin, Chlordane, Dieldrin, Dichlorodiphenyldichloroethane, Dichlorodiphenyldichloroethylene, 1,1,1-trichloro-2,2-bis(p-chlorophenyl)ethane)) and Acetone.

The BTX experts subsequently submitted an interim action report recommending various remedial actions to address contamination on the Neighboring Properties. (Compl. ¶ 48.) A revised interim action report was submitted, which the EPA approved. The EPA then directed that the remedial actions be implemented as required by the 1992 Director's Orders, to which Breen had agreed. (Compl. ¶¶ 33, 52.)

In December 2003 and then again in June 2008, the Ohio EPA collected soil samples from the Neighboring Properties, and found the presence of multiple contaminants. (Compl. ¶¶ 55, 56.) On July 13, 2010, the Ohio EPA notified Breen of his failure to comply with the 1992 Director's Orders, and that contamination migrating from the BTX site was causing contamination on the Neighboring Properties. (Compl. ¶ 57.)

Defendant Trabue has owned the Neighboring Properties since on or about August 6, 2010. (Compl. ¶¶ 18, 32.)

## II.   STANDARD OF REVIEW

The Court reviews a Rule 12(c) motion for judgment on the pleadings in the same

3

manner it would review a motion made under Federal Rule of Civil Procedure 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Generally, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.* Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*).

Several considerations inform whether a complaint meets the facial-plausibility standard. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Further, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint will not, however, "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Courts must construe the claim at issue in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

### III. DEFENDANT TRABUE'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Trabue and Defendant Dick move separately for judgment on the pleadings for

4

counts three (operation on a hazardous waste facility without a permit), four (failure to have a closure plan), five (failure to remove hazardous waste in accordance with an approved closure plan) and ten (ultrahazardous activity). (ECF Nos. 65, 67.) The State opposes the Motions.

## A. Count Three

Both Defendants move for judgment on count three, operation of a hazardous waste facility without a permit. Under Ohio law, a "facility or "hazardous waste facility" means:

> [a]ll contiguous land, structures, other appurtenances, and improvements on the land, used for treating, storing, or disposing of hazardous waste. A facility may consist of several treatment, storage, or disposal operational unites (e.g., one or more landfills, surface impoundments, or combinations of these).
>
> For the purpose of implementing corrective action under rule 3745-54-101 of the Administrative Code, all contiguous property under the control of the owner or operator seeking a permit under the hazardous waste rules. This definition also applies to facilities implementing corrective action under Section 3008(h) of RCRA or section 3734.20 of the Revised Code.

O.R.C. 3745-50-10(A)(48)(a) & (b).[1] Ohio Revised Code 3734.02(E)(2) further defines on-site facility as "a facility that stores, treats, or disposes of hazardous waste that is generated on the premises of the facility" and off-site facility as "a facility that stores, treats, or disposes of hazardous waste that is generated off the premises of the facility and includes such a facility that is also an on-site facility." O.R.C. § 3734.02(E)(1)(a) & (b). "Storage" is defined as "the holding of hazardous waste for a temporary period, at the end of which the hazardous waste is treated, disposed of, or stored elsewhere." Ohio Admin. Code. § 3745-50-10-122. "Treat" or "treatment" are defined as "any method, technique, or process designed to change the physical, chemical, or biological characteristics or composition of any hazardous waste; to neutralize the waste; to recover energy or material resources from the waste . . ." Ohio Admin. Code § 3745-50-10(137).

---

[1] Plaintiff cites to OAC Ann. 3745-50-10(A)(46), however (46) defines "[e]xplosives or munitions emergency response[,]" thus the Court looks to (48).

5

1. **Defendant Trabue**

The threshold issue for counts three, four, and five against Defendant Trabue is whether the State has plausibly pled that Defendant Trabue owned, established, or operated a hazardous waste facility. Plaintiff asserts "[b]ecause Trabue Dublin owns the Neighboring Properties [to BTX] they are liable for cleanup." (Resp. in Opp. at 6, ECF No. 73.) Under this assertion, mere ownership of property neighboring BTX imposes liability on Defendant Trabue. Put another way, Plaintiff argues, "[u]nder Ohio's Hazardous waste rules, if contiguous land was used for the disposal of hazardous waste, it is a 'facility' as defined by Ohio Admin. Code 3745-10-(A)(46), and subject to hazardous waste closure." (Resp. n Opp. at 7.) Defendant Trabue counters that solely owning Neighboring Property is not sufficient under Ohio law, but rather, it would need to engage in an activity such as storing, treating, or disposing of hazardous waste.

Notably absent from the State's Complaint is any allegation that any activity related to the existence of hazardous waste occurred at the behest of the Neighboring Property's owner past or present. The Complaint never alleges that any owner of the Neighboring Property has ever stored, treated, or disposed of waste on the property. Rather, the State alleges that BTX is responsible for all waste disposal affecting the Neighboring Property.

Contrary to the State's contention, the State contends, property does not automatically become a hazardous waste facility just because it is contiguous to a hazardous waste facility. *See State ex rel. Ohio, AG v. LG Dev. Corp.*, 2010-Ohio-1676, 187 Ohio App. 3d 211, 219 (6th Dist. Ohio 2010) (holding that as defined under Ohio statutes the defendant, owners of an auto salvage yard, "can be charged with and convicted of violating Ohio's hazardous waste laws when they dispose of and store hazardous waste on their facilities and are in fact operating a hazardous waste facility.") Rather, as Defendant Trabue contends, the verbs within the statutory definition

6

of "hazardous waste facility" implicitly necessitate activity related to the existence of hazardous waste on the property.[2] As the State does not allege that Defendant Trabue's property owner ever used the land to store, treat, or dispose of hazardous waste, Defendant Trabue's property cannot be considered a hazardous waste facility. Accordingly the Motion for Judgment on the Pleadings as to count three is **GRANTED**.

### 2. Defendant Dick

The State alleges that Defendant Dick purchased a hazardous waste facility, BTX, in 2008 and is the current owner of that land. (Compl. ¶¶ 19, 29.) The disposal of hazardous waste on Defendant Dick's property is well documented. Defendant Dick asserts that the State fails to state a claim against him because it does not allege that he personally used the property to store, treat, or dispose of hazardous waste. (Dick Mot. for J. on the Pleadings at 9, 10.) Nowhere in any of the statutes pertaining to the disposal of hazardous waste, however, is the owner of a hazardous waste facility required to have engaged in the disposal, treatment, or storage of the waste. Rather, as Defendant Dick asserts ". . . to be a hazardous waste facility requires that property be used to store, treat, or dispose of hazardous waste." (*Id.* at 9 n.3.); O.R.C. 3734.02(E)(2). The State alleges that Defendant Dick's property has been used to store, treat, or dispose of hazardous waste. Thus, the Court concludes that the State has plausibly pled that Defendant Dick owns a hazardous waste facility.

Under count three, however, the State asserts that Defendant Dick operates a hazardous waste facility without a permit. Operation of a hazardous facility implicitly requires the ongoing

---

[2] Trabue points out that in contrast to the Ohio statutes defining "hazardous waste facility," the federal statute Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") § 101(9), 42 U.S.C. § 9601(9) (under which Trabue does not move for judgment on the pleadings) defines "facility" to include not only "any site where a hazardous substance has been deposited, stored, disposed of or placed," but also any site "or area where a hazardous substance has . . . otherwise come to be located."

7

use of that property as a hazardous waste facility as opposed to the land being a hazardous waste facility. The Complaint does not allege that Defendant Dick's property currently operates as a hazardous waste facility without a permit or that it has every operated as a hazardous waste facility under his ownership. This is similar to *Ohio ex rel. DeWine v. Superior Fibers, Inc.*, Case No. 2:14-cv-1843, 2015 U.S. Dist. LEXIS 132885, at *18–19 (S.D. Ohio Sep. 30, 2015), where the Court found the State failed to show a likelihood of success on the merits regarding similar Ohio statutory claims made based on the unpermitted and unauthorized disposal of hazardous waste. There, as here, the owner of the property was the subsequent owner and the State did not allege that the defendant ever used and/or disposed of any contaminants on the property. *Id.* Accordingly, judgment is **GRANTED** to Defendant Dick on count three.

### B. Counts Four and Five

The Ohio administrative provisions under which the State brings counts four (failure to have a closure plan) and five (failure to remove hazardous waste in accordance with an approved closure plan) are only applicable to hazardous waste facilities. Violations alleged in count four, failure to have a closure plan, as pled in the Complaint, are found under Ohio Adm. Code § 3745-55-11[3] and 3745-55-12. Violations alleged under count five, failure to remove hazardous waste in accordance with an approved closure plan, is found under Ohio Adm. Code § 3745-55-13. Ohio Adm. Code § 3745-54-01 delineates the applicability of the regulations cited in counts four and five. Section 37-54-01(B) provides: "Chapters 3745-54 to 3745-57 . . . of the Administrative Code apply to owners and operators of all facilities which treat, store, or dispose of hazardous waste . . . ." Ohio Adm. Code § 3745-54-01(B).

Ohio Administrative Code 3734-55-11 requires the owner or operator of a hazardous waste facility to close the facility in a manner that:

---

[3] The Complaint references Ohio Administrative Code § 3734-55-11 for count four. That section, however, does not exist. Accordingly, the Court looks to Ohio Administrative Code § 3745-55-11, which considers closure plans.

8

> (A) [m]inimizes the need for further maintenance; and (B) controls, minimizes, or eliminates, to the extent necessary to prevent threats to human health and the environment, post-closure escape of hazardous waste, hazardous constituents, leachate, contaminated run-off, or hazardous waste decomposition products to the ground or surface waters or to the atmosphere. . .

Ohio Adm. Code 3745-55-11. Ohio Administrative Code 3745-55-13 provides that, within ninety days of receiving the final volume of hazardous waste at a hazardous waste facility, the owner must treat, remove, or dispose of on-site, all hazardous wastes in accordance with an approved closure plan. Ohio Adm. Code 3745-55-13(A). It further provides that all closure activities must be completed in accordance with the approved closure plan within one hundred and eighty days after receiving the final volume of hazardous waste. Ohio Adm. Code 3745-55-13(B).

### 1. Defendant Trabue

This Court has already determined Defendant Trabue did not operate a hazardous waste facility under Ohio law. Accordingly, judgment is **GRANTED** for Defendant Trabue on counts four and five.

### 2. Defendant Dick

Unlike count three, the statutory text under which the State brings counts four and five requires the defendant to own a hazardous waste facility, but does not require current operation of said facility. Here, the State has plausibly pled that Defendant Dick owns a hazardous waste facility. It has further asserted that he does not have a closure plan in place as required by Ohio Administrative Code 3734-55-11, and that he has failed to remove hazardous waste in accordance with an approved closure plan as required by Ohio Adm. Code 3745-55-13(A) and (B). (Compl. ¶¶ 110, 112, 116.) Thus, the State has pled plausible claims against Defendant Dick under counts four and five. Accordingly, Defendant Dick's Motion for Judgement on the Pleadings is **DENIED** as to counts four and five.

### C. Count Ten – Ultrahazardous Activity

Finally, Defendant Trabue and Defendant Dick move for judgment on count ten, ultrahazardous activity, asserting that the State fails to allege Trabue or Dick engaged in any action giving rise to a claim for ultrahazardous activity. The State counters that Trabue is liable because it has "allowed the disposal of hazardous wastes to remain on the Neighboring Properties." (Resp. in Opp. at 9, ECF No. 73.) The State similarly asserts that Defendant Dick is liable because of "allowing the disposal of hazardous wastes on the Buckeye Terminix Site to continue constitutes an ultrahazardous activity." (Resp. in Opp. at 3, ECF No. 80.)

"The types of activities that qualify as ultrahazardous/abnormally dangerous is quite limited." *In re E. I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, Case No. 2:13-md-2433, 2015 U.S. Dist. LEXIS 88025, at *1101 (S.D. Ohio July 6, 2015) (citing *Caveny v. Raven Arms Co.*, 665 F. Supp. 530, 532 (S.D. Ohio 1987), *aff'd*, 849 F.2d 608 (6th Cir. 1988) ("[T]he ultrahazardous activity doctrine, as defendant points out, is narrow in scope.")). "To come within the doctrine, courts have found that the activity must have an immediate, high risk of great physical harm to those in close proximity, which high risk cannot be reduced through the exercise of due care." *Id.* (citing *Caveny*, 665 F. Supp. at 532).

Key here is the use of "activity." The State does not allege Defendant Trabue or Defendant Dick engaged in any activity related to the disposal of hazardous waste on the two properties. Rather, the State only asserts that hazardous waste was disposed of by BTX while under the ownership of John and Janice Breen. (Compl. ¶¶ 84–86.) Thus, the State does not plausibly plead that either Defendant engaged in an ultrahazardous activity. Accordingly, judgment is **GRANTED** for Defendant Trabue and Defendant Dick on count ten.

### IV. CONCLUSION

For the foregoing reasons Defendant Trabue's Motion for Judgment on the Pleadings is **GRANTED** as to counts three, four, five and ten and Defendant Dick's Motion for Judgment on

10

the Pleadings is **GRANTED** as to counts three and ten and **DENIED** as to counts four and five.

**IT IS SO ORDERED.**

_____8-28-2018_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**